IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**HAPPY STOMPINGBEAR**                                                                    **PLAINTIFF**
**ADC #651503**

v.                                              Case No: 4:18-cv-00822 KGB

**HAZEL ROBINSON**                                                                        **DEFENDANT**

<u>**OPINION AND ORDER**</u>

Plaintiff Happy Stompingbear a/k/a Christopher Ward, an Arkansas Division of Correction (ADC)[1] inmate, filed this *pro se* 42 U.S.C. § 1983 action alleging retaliation by defendant Hazel Robinson (Dkt. No. 2-1). Specifically, Happy Stompingbear alleges Ms. Robinson retaliated against him on November 29, 2016, when she did not give him any juice with his breakfast tray (*Id.*, at 4); on January 13, 2017, when she would not notarize his documents during notary call (*Id.*); and on April 17, 2017, when she would not give him a cup so he could get a drink of water from the sink (*Id.*). He sues Ms. Robinson in both her official and individual capacities and seeks damages and an apology (*Id.*, at 5).

Before the Court is a motion for summary judgment, a brief in support, and a statement of undisputed facts filed by Ms. Robinson (Dkt. Nos. 39-41). Happy Stompingbear filed a response in opposition to Ms. Robinson's motion and a statement of material facts (Dkt. Nos. 42-43). For the reasons that follow, the Court grants Ms. Robinson's motion for summary judgment.

**I.     Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is

---

[1] Formerly the Arkansas Department of Correction. *See* Ark. Code Ann. § 25-43-402.

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## II.    Facts[2]

1. During the times relevant to this lawsuit, Happy Stompingbear was incarcerated at the ADC's Varner Supermax Unit (Dkt. No. 39-1, at 11-12). The inmates at the Varner Supermax Unit are housed in individual cells with each cell having a sink and a toilet (Dkt. No. 39-2, ¶ 4).

2. Ms. Robinson was a Sergeant at the Varner Supermax Unit (Dkt. No. 39-1, at 13; Dkt. No. 39-2, ¶ 3).

3. On May 26, 2016, Happy Stompingbear was placed in punitive isolation where Ms. Robinson inventoried his property (Dkt. No. 39-1, at 15). Happy Stompingbear asserts that, while inventorying his property, Ms. Robinson took some of his personal property, including his altar cloth and laundry bag (Dkt. No. 39-1, at 15-17). Happy Stompingbear states that, when he refused to sign the property form because it did not list all of his property, Ms. Robinson threatened him with disciplinary action if he did not sign the form (Dkt. Nos. 7, at 4; 39-1, at 16). Happy Stompingbear states that he signed the form under duress and filed a grievance against Ms. Robinson (Dkt. No. 43, at 4, ¶ 10).

4. On June 7, 2016, Happy Stompingbear submitted a grievance VSM16-02006 regarding this incident (Dkt. No. 39-3).[3]  In grievance VSM16-02006, Happy Stompingbear

---

[2] The facts are taken from those submitted by Ms. Robinson which are supported by documents attached to her motion for summary judgment (Dkt. Nos. 39-1 – 39-8), including the Deposition Testimony of Happy Stompingbear (Dkt. No. 39-1), the Declaration of Hazel Robinson (Dkt. No. 39-2), and the Declaration of Terri Grigsby Brown (Dkt. No. 39-8). Facts disputed by Happy Stompingbear are noted (*see* Dkt. No. 43, at 4-6).

[3] Terri Grigsby Brown is the Inmate Grievance Supervisor for the ADC. Her job responsibilities include responding to non-medical inmate grievance appeals for the current and former ADC Chief Deputy Directors and Assistant-Directors (Dkt. No. 39-8, ¶ 2). Mrs. Brown reviewed Happy Stompingbear's grievance appeal files and found five non-medical grievances, VSM16-02006, VSM16-03953, VSM17-00237, VSM17-00238, and VSM17-01483, which specifically name or make reference to Ms. Robinson that were filed between May 26, 2016 and November 5, 2018 (Dkt. No. 39-8, ¶ 5-6).

complains that, on May 26, 2016, "the lady who separated his property in ISO 1" took his altar cloth and commissary bag (*Id.*, at 3). The Warden found the grievance lacked merit (*Id.*, at 4). Happy Stompingbear appealed the Warden's decision to the Deputy Director who concurred with the Warden's decision and denied Happy Stompingbear's appeal (*Id.*, at 4, 6).

5. Happy Stompingbear claims that Ms. Robinson refused to give him juice on November 29, 2016, in retaliation for grievance VSM16-02006 (Dkt. No. 7, at 4). In his deposition, Happy Stompingbear testified that Ms. Robinson was serving the inmates their trays that day, and when he asked Ms. Robinson about his juice, she replied "I ain't giving you shit else"; told him that she remembered that Happy Stompingbear filed a grievance against her; and said told him she would make things worse for him if he ever filed another grievance against her (Dkt. No. 39-1, at 20-22; Dkt. No. 43, at 4, ¶¶ 16, 46-47).

6. Ms. Robinson explained that on November 29, 2016, she served the inmates in cell block 5 their breakfast trays (Dkt. No. 39-2, ¶ 10). At the time, Happy Stompingbear was housed in cell block 5 (*Id.*). Ms. Robinson states that, when she approached Happy Stompingbear's cell, he told her to get from in front of his cell (*Id.*). She also explained that she did not refuse to give Happy Stompingbear his juice but that Happy Stompingbear refused to take any juice from her (*Id.*).

7. In her declaration, Ms. Robinson denies that she told Happy Stompingbear she was not going to give him "shit else" (Dkt. No. 39-2, ¶ 11). She also states that she never told Happy Stompingbear that she remembered him from when he wrote her up over his property and that he better not write her up again or she would make it worse on him (*Id.*).

8.     Following the November 29, 2016, incident, Happy Stompingbear submitted grievance VSM16-03953 (Dkt. No. 39-1, at 22; Dkt. No. 39-4). In grievance VSM16-03953, he complained:

> This morning Mrs. Robinson refused to give me juice. I went to the door to get my tray, she gave me a tray then promptly shut my trap. When I asked her for some juice she told me she wasn't going to give me shit else. She then said she remembered me from when I wrote her up over my property. She said I'd better not write her up again or she'd make it worse on me. I said please leave me alone, I'm done with you. Then when picking up trays she refused to get my tray, she didn't even slow down at my cell but walked right by. This is obvious retaliation due to a previous grievance that she held a grudge for this long shows her evil state of mind. I do not feel safe with her around me, there's no telling what she is capable of. This was crazy, how blatant she was.

(Dkt. No. 39-4, at 3). The Warden found the grievance without merit (*Id.*, at 4). Happy Stompingbear appealed the Warden's decision to the Deputy Director who concurred with the Warden's finding and denied his appeal (*Id.*, at 5).

9.     Happy Stompingbear alleges that Ms. Robinson retaliated against him again on January 13, 2017, when she entered the cell block for notary call and refused to notarize his document (Dkt. No. 7, at 4).

10.    In his deposition, Happy Stompingbear testified that Ms. Robinson entered the cell block on January 13, 2017, saying "notary call, anybody need notary call." (Dkt. No. 39-1, at 25). He stated that a few inmates called out their cell number indicating that they needed notary, but when he called out his cell number, Ms. Robinson said "I ain't notarizing shit for you, bitch." (*Id.*; Dkt. No. 43, at 4, ¶¶ 19, 48).

11.    In her declaration, Ms. Robinson stated that she does not remember Happy Stompingbear saying that he needed a notary on January 13, 2017, but she claims that she would not have refused to notarize his documents if he had asked (Dkt. No. 39-2, ¶ 13). Ms. Robinson

stated that while conducting notary call on January 13, 2017, she never said to Happy Stompingbear "I ain't notarizing shit for you bitch" (*Id.*, ¶ 14).

12. Happy Stompingbear testified that he probably wanted Ms. Robinson to notarize an affidavit, and he did not remember whether he had a court case pending at the time (Dkt. No. 39-1, at 26; Dkt. No. 43, at 4, ¶ 20). Happy Stompingbear testified that Ms. Robinson did not cause him to miss a court deadline when she would not notarize his document and that he had another officer notarize his document (Dkt. No. 39-1, at 26, 33).

13. In January 2017, Happy Stompingbear had one court case pending in the Eastern District of Arkansas, *Ward v. Kelley*, Case No. 5:16-CV-00119-KGB, filed on April 18, 2016 (Dkt. No. 41, ¶ 21). Happy Stompingbear asserts that *Ward v. Kelley,* Case No. 5:16-CV-00312-BSM was also pending (Dkt. 43, at 4, ¶ 21), and he may have been working on another lawsuit as well (*Id.*). The Court notes that Case No. 5:16-CV-00312-BSM was closed on November 25, 2016, but Happy Stompingbear's appeal to the Eighth Circuit Court of Appeals was pending in January 2017 (*see* Dkt. Nos. 11-24 in Case No. 5:16-CV-00312-BSM).

14. Following this incident, Happy Stompingbear filed two grievances against Ms. Robinson, grievance VSM17-00237 (Dkt. No. 39-5) and grievance VSM17-00238 (Dkt. No. 39-6).

15. Happy Stompingbear submitted grievance VSM17-00237 on January 18, 2017, alleging that Ms. Robinson had the televisions shut off on the evening of January 14, 2017, as a means of corporal punishment for the officer calling and bothering her about the televisions (Dkt. No. 39-5, at 3). The Warden found grievance VSM17-00237 without merit (*Id.*, at 4). Happy Stompingbear appealed the Warden's decision to the Deputy Director who concurred with the Warden's finding and denied his appeal (*Id.*, at 6).

16.     On January 19, 2017, Happy Stompingbear submitted grievance VSM17-00238. In the grievance he complains that:

> Friday the 13th, that is 1-13-17, Sgt. Robinson came into cell block 5 announce "legal mail and notary. Call out your numbers." After a few called out their cell numbers I called out mine "64 needs notary." Sgt. Robinson then yelled "I ain't notarizing shit for you bitch!" I know this to be direct retaliation for my previous grievances that I have lodge against her. She once even told me she'd make things worse on me. I am scared to turn in legal mail the days she works. I'm afraid she'll trash them. At this point, I can't prove it but there is legal mail that I did not receive that I believe she threw away. Also the last grievance I filed on her I believe come up missing. A lot of stuff isn't right, it's forming a pattern that can't be denied. She is an evil person who is acting out unchecked her misdeeds are ever being covered up. Leading her to believe she has immunity.

(Dkt. No. 39-6, at 3). The Warden found the grievance without merit (*Id.*, at 4), and his decision was upheld on appeal by the Deputy Director (*Id.*, at 6).

17.     Happy Stompingbear alleges that Ms. Robinson retaliated against him again on April 17, 2017, when she would not give him a cup to drink from (Dkt. No. 7, at 4).

18.     During his deposition testimony, Happy Stompingbear testified that on April 17, 2017, he was placed in the dayroom of ISO[4] following an altercation (Dkt. No. 39-1, at 29). He explained that there was a sink in the dayroom but to get a drink from the sink he either had to use his hands or a cup (*Id.*, at 29-30). He stated that, while in the dayroom he became thirsty and because his hands were not sanitary, he asked Ms. Robinson for a cup, but she refused to give him one (*Id.*).

19.     In her declaration, Ms. Robinson states that she did not issue cups to the inmates while working at the Varner Supermax Unit (Dkt. No. 39-2, ¶ 16). She explained that the inmates normally had their own cups, and she would bring a pitcher around to fill up their cups (*Id.*). Happy

---

[4] "ISO" likely refers to Isolation, but that is not clarified in the pleadings.

Stompingbear claims he has never seen Ms. Robinson filling cups with pitchers (Dkt. 43, at 5, ¶ 50).

20.     Following this incident, Happy Stompingbear submitted grievance VSM17-01483 on April 27, 2017 (Dkt. No. 39-7).  Happy Stompingbear complained that he asked Ms. Robinson on April 17, 2017, for a cup to drink from and when he began to explain, she cut him off saying "You know I don't fuck with you bitch ass white boy" as she walked off (*Id.*, at 4).  The Warden found grievance VSM17-01483 without merit because Ms. Robinson was no longer employed with the ADC and a statement could not be obtained from her to verify Happy Stompingbear's complaint (*Id.* at 5).  On appeal, the Deputy Director concurred with the Warden's finding and denied Happy Stompingbear's appeal (*Id.* at 6).

21.     Ms. Robinson denies retaliating against Happy Stompingbear (Dkt. No. 39-2, ¶¶ 8, 9, 12, 15, and 17).  Ms. Robinson further states that she never threatened Happy Stompingbear, issued him a disciplinary, or took any type of adverse action against Happy Stompingbear (*Id.*, ¶¶ 8, 18).

22.     In his deposition testimony, Happy Stompingbear acknowledged that he continued to file grievances naming Ms. Robinson and that Ms. Robinson's actions did not prevent him from filing lawsuits (Dkt. No. 39-1, at 30–31).  He claims this is because he is not a person of ordinary firmness (*Id.*; Dkt. 43, at 56, ¶¶ 52-53).

23.     Since June 17, 2016, the date of the first grievance Happy Stompingbear submitted naming Ms. Robinson, Happy Stompingbear has filed six lawsuits in addition to the present lawsuit:  *Ward v. Kelley*, Case No. 5:16-cv-00312-BSM (filed Sept. 30, 2016); *Stompingbear v. Kelley*, Case No. 6:18-cv-06105-RTD (filed Oct. 24, 2018); *Stompingbear v. Brown*, Case No. 5:18-cv-00281-JM (filed Nov. 5, 2018); *Stompingbear v. Kelley*, Case No. 4:18-cv-00827-KGB-

ERE (filed Nov. 5, 2018); *Stompingbear v. Reed*, Case No. 6:18-cv-06114-RTD (filed Nov. 15, 2018); *Stompingbear v. Payne*, Case No. 4:21-cv-00226-KGB (filed March 22, 2021).

### III.  Analysis

#### A.  Sovereign Immunity

Ms. Robinson correctly asserts that Happy Stompingbear's monetary claims against her in her official capacity are barred by sovereign immunity.  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).  Accordingly, Ms. Robinson is awarded summary judgment with respect to Happy Stompingbear's official capacity claims seeking monetary damages.

#### B.  Qualified Immunity

Ms. Robinson asserts that she is entitled to qualified immunity with respect to Happy Stompingbear's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by Happy Stompingbear establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise

"their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Ms. Robinson argues she is entitled to qualified immunity because Happy Stompingbear cannot prove that she violated his constitutional rights.

To succeed on a § 1983 retaliation claim, Happy Stompingbear must prove: (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020); *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013). Speculative and conclusory, or *de minimis*, allegations cannot support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). A plaintiff must also prove a causal connection between the constitutionally protected activity and the adverse action. *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004). Temporal proximity between a protected activity and an adverse action "is relevant but not dispositive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)). To succeed on a retaliation claim, Happy Stompingbear must also provide affirmative evidence of a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d 1152, 1157 (8th Cir. 2009); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient.").

Ms. Robinson denies that she took the actions Happy Stompingbear describes on the three dates in question. For purposes of this decision, however, the Court views the facts in the light most favorable to Happy Stompingbear and presumes that the facts he asserts are true. And while retaliation for the use of a prison grievance procedure is actionable, *see Orebaugh v. Caspari*, 910

F.2d 526, 528 (8th Cir. 1990) (per curiam), Happy Stompingbear has not shown any causal connection between the grievances he wrote naming her and the actions he describes that she took. He also has not provided any evidence, other than his testimony, that her actions were taken with a retaliatory motive. *See Haynes v. Stephenson,* 588 F.3d at 1157; *see also Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits.); *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."). All of the grievances Happy Stompingbear wrote naming Ms. Robinson were found without merit and the appeals denied. There is no evidence that Ms. Robinson suffered any consequences as a result of those grievances. For these reasons, Happy Stompingbear cannot show the necessary connection to or motive for Ms. Robinson's actions.

Furthermore, the actions Happy Stompingbear alleges Ms. Robinson took – refusing to provide him with juice, refusing to notarize a document, and refusing to give him a drinking cup – are not the sort of adverse actions that would chill a person of ordinary firmness from continuing to exercise his First Amendment rights. "The ordinary-firmness test is designed to weed out trivial matters from substantial violations of the First Amendment." *Gonzalez*, 971 F.3d at 744 (citing *Santiago*, 707 at 992). "'The test is an objective one, not subjective. The question is. . . [w]hat would a person of 'ordinary firmness' have done in reaction to the [adverse action]?'" *Id.* (quoting *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003)). While the test is an objective one, "how the plaintiff acted might be evidence of what a reasonable person would have done." *Garcia*, 348 F.3d at 729. *See Gonzalez*, 971 F.3d at 745 (considering plaintiff's actions in response to the alleged retaliation as evidence of what a person of ordinary firmness would have done and

affirming grant of summary judgment); *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (noting that plaintiff continued to exercise her First Amendment rights despite the retaliatory acts of the defendants).

In asserting that a person of ordinary firmness would not be chilled from continuing to file lawsuits or grievances in this matter, Ms. Robinson offered evidence that Happy Stompingbear continued to file grievances against her and lawsuits after the alleged retaliatory actions by Ms. Robinson. After the first alleged incident of retaliation by Ms. Robinson on November 29, 2016, Happy Stompingbear proceeded to file four additional grievances naming Ms. Robinson (VSM16-03953, VSM17-00237, VSM17-00238, and VSM17-01483). Happy Stompingbear also initiated six lawsuits, besides this one: *Ward v. Kelley*, Case No. 5:16-cv-00312-BSM (filed Sept. 30, 2016); *Stompingbear v. Kelley*, Case No. 6:18-cv-06105-RTD (filed Oct. 24, 2018); *Stompingbear v. Brown*, Case No. 5:18-cv-00281-JM (filed Nov. 5, 2018); *Stompingbear v. Kelley*, Case No. 4:18-cv-00827-KGB- ERE (filed Nov. 5, 2018); *Stompingbear v. Reed*, Case No. 6:18-cv-06114-RTD (filed Nov. 15, 2018); *Stompingbear v. Payne*, Case No. 4:21-cv-00226-KGB (filed March 22, 2021).

The Court has considered Happy Stompingbear's actions in continuing to file grievances and lawsuits as evidence of what a person of ordinary firmness might do. Under all of the circumstances presented, the Court finds that Happy Robinson's actions as alleged by Happy Stompingbear would not chill a person of ordinary firmness from continuing to exercise his First Amendment rights.

In sum, Happy Stompingbear cannot prove a causal connection between any grievance he filed and Ms. Robinson's actions, a retaliatory motive on Ms. Robinson's part, or that her actions

would chill a person of ordinary firmness from exercising his First Amendment rights. For these reasons, Ms. Robinson is entitled to summary judgment.

### IV. Conclusion

Happy Stompingbear's official capacity claims are barred by sovereign immunity. Ms. Robinson is entitled to qualified immunity with respect to Happy Stompingbear's individual capacity claims because Happy Stompingbear cannot establish that Ms. Robinson violated his constitutional rights. Accordingly, the Court grants Ms. Robinson' motion for summary judgment (Dkt. No. 39). Happy Stompingbear's claims against Ms. Robinson are dismissed with prejudice.

So ordered this 25th day of March, 2022.

_____
Kristine G. Baker
United States District Judge